Tunstall v. Edwards. Doesn't really matter to us where you sit. Okay, Mr. Norris. My name is Christopher Norris. I'm with Carlton Fields. I represent the appellant Mr. Tunstall in this matter. This is an appeal of the district court summary judgment where they dismissed all of my client's claims against the appellee, Kelley Edwards. As you all probably know by now, there's a huge factual background that led up to this lawsuit. So I will spare you the details and get right to the meat. So let's dive into one of the most contentious points, the Section 1983 claims. So within Mr. Tunstall's complaint, he sues Ms. Edwards on the basis that she procured a false transmittal report in 2008. See, she worked within the Baldwin County Department of Human Resources as a financial support worker. What is the basis for the conclusion that she knew the information was false? That's an excellent question. The basis is circumstantial evidence. Specifically, for starters, she attaches three documents to her transmittal report. The one she claims is a dispositive order is from the 1994 case where in the court, Georgia court entered a final judgment of divorce. When you look at that final judgment of divorce, it's silent as to any child support obligation. So does that necessarily show that it's superseded? Well, let's look at what happens immediately after. Less than a year later, there's a new child support proceeding, and it's in Alabama. They establish a child support amount of $370, which is half of what this alleged child support obligation from Georgia was. For nine years, it continues that way, and eventually in 2004, it gets increased to about $570. The entire time, the former wife makes no mention of this alleged order from Georgia. So Kimberly Glidewell is his ex-wife. Correct. Does he ever allege that in his complaint? Does he ever tell us that? I believe he does, Your Honor. I believe he does. I wouldn't know the exact paragraph off the top of my head, but I believe he does. But it's also reflected in the child support orders. So what's the connection between Kelly O. Edwards? I don't know her. I don't want to disparage her. But it sounds like she's a relatively low-level Alabama State employee. Does he tell us why in the world she should be liable for several million dollars and ruining his life? I mean, is she a friend of his ex-wife? I mean, what's the rest of the story if there is one? There's no obligation as to the connection between his ex-wife and Ms. Edwards. They're both government employees within the Baldwin County. His ex-wife was an employee for the Sheriff's Department. Ms. Edwards worked in the Department of Human Resources. But with all that aside, that doesn't matter. And the reason why is because we have enough evidence on the record to show that Ms. Edwards created or essentially caused this later Alabama proceeding in 2011. And this is why. For starters, even if we put aside the fact that maybe these Georgia orders had superseded any pre-existing child support obligation, there's no mention at all of anything of these 13 years of proceedings in Baldwin County as to this child support obligation that was ultimately terminated. But with respect to Ms. Edwards' responsibilities, it almost sounds like Edwards is just a pass-through. I mean, is she a lawyer? Does she have any responsibility to go behind another court's order to determine whether or not it's valid? I'm not understanding. Your brief uses the word manipulate. It suggests that she had an ill motive, that there was some reason why she picked on your client for purposes of these child support proceedings. But you're not making it clear what that would be. Right. Admittedly, there might not be evidence of the motive, but there is evidence of intention still. The fact that she omits any reference to these child support orders in Alabama is huge. And we know that because later on, these Alabama courts rely on those exact same proceedings when they ultimately vacated this Alabama default judgment in 2011. There's absolutely no reason why she shouldn't have mentioned it. At the time this transmittal report was issued, the former wife was domiciled in Baldwin County, Alabama. The former wife's trying to bring in these orders from 1990, like 1994, 1992 from Georgia. Why would someone in Ms. Edwards' position, whose sole job is to investigate these and determine whether this is valid and to see if there's anything else out there, and we know that's her job because she swears to it in her sworn affidavit, why would she not check the records within the county where the former wife is domiciled? Well, maybe she was negligent. Maybe she's a government worker who's coming in and doing her job and doing the best she can and not fully investigating everything that comes before. Isn't this just a straight immunity case like a cop that arrests somebody on a bad warrant from another state and they don't look at the warrant, they don't drill into it, it looks good on the face, they arrested him. Okay, it's not a good 1983 case because he's got immunity. Isn't that what she was doing? Isn't that where we are? I would disagree, Robert. I think a really good case on point is the Snell v. Tunnel case. We do cite it in passing in our briefs. Within that case, and I'll briefly just touch on it just because I do find it to be analogous to this situation. Let's be clear, okay, since Judge Barber has raised the qualified immunity issue. You've got to show, there's no question about discretionary authority here, right? You've got to show that Ms. Edwards violated your client's constitutional right and that it was clearly established that she had fair notice that what she was doing by sending the transmittal violated a constitutional right. What precisely is that constitutional violation and how was it clearly established that it occurred here? That seems to me totally absent here. The constitutional right would be the right to his own property, his own money, and anything that would reasonably follow from saying- I thought in your gray brief where you try to argue this for the first time, you identified this as a Fourth Amendment right to be free from an unreasonable seizure. That would be one of the rights. See, it's like a moving target. I'm trying to figure out if that would be one of the rights. This is a precise thing. We've got to figure out for qualified immunity purposes. You don't address this in the blue brief at all. What's the constitutional violation precisely and how was it clearly established? The constitutional violation is a violation of the Fourth Amendment right for seizure of his property. It's established because- How would Tunstall have been on notice that sending the transmittal violated that right? What case would have told Tunstall that? The best case that would be the most analogous would be the Snell v. Tunnell case because Ms. Edwards, her transmittal was false and inaccurate and made a misrepresentation. Because of that misrepresentation, it caused other actors to initiate legal proceedings that would naturally follow when you make misrepresentations of that extent. In that case, we had social workers from Oklahoma who made false allegations about child abuse within a foster home. Because of those false allegations, a government attorney opened a case basically seeking temporary custody and a search of the home once after that action took place because the state judge granted that, granted the temporary custody. It was later revealed all of that was false. But it still gave liability under Section 1983. So you're saying that Ms. Edwards was more than just a pass-through, that she had an obligation to investigate these orders, to investigate the underlying documents that serve the basis for these child support orders and the failure of her to do that equates to a constitutional violation? That is correct. And that she would have known that from binding case law? She would have known that. She would have known at the time that the child support proceedings had terminated in Alabama and that this had never been brought, like the Georgia orders had never been domesticated. That was ultimately the reason why the default judgment was vacated because that's what the Alabama courts focused on. For the record, just to be clear too, it appears that your client makes some allegations against Ms. Edwards during the time period when she was not even assigned to his case. Is that correct? Correct. I think there was a two-month period where she wasn't assigned.  It's a few months. But there is a portion of that time where my client alleges she was assigned to the case. She also swears in her affidavit that she was in fact assigned to the case and one of her duties during that time was uploading information to Alex, which was also one of the other causes of action, the defamation claim. I can touch on that very briefly. Down below, the district court found there was no publication essentially because Ms. Edwards couldn't personally give the defamatory material to these credit reporting agencies. This is a very weird and unusual way to interpret the publication element because that's not how courts go through it. Publication isn't about the method in which you convey the defamatory material. It concerns with whether or not that defendant caused the defamatory material to be viewed by a third party. That one case from the Alabama Supreme Court, the Dickens case that I cite, it's very on point because in that case you have someone telling a stenographer to type something down. It was defamatory material. The fact that the stenographer heard it, that was enough to show publication. So just as long as any third party is viewing it and as long as Ms. Edwards was the reason why they're viewing it, that makes publication. And there's a qualified immunity issue onto the Section 1983 claims and there's also a state agent immunity issue as to the Alabama defamatory cause of action as well. So even though, Alex, as I understand it, is an automated system, your argument is that because the system relied on information that Edwards submitted, that is the causal connection to make Ms. Edwards liable for defamation? That is correct because as she represents in her own affidavit, her job is not simply to just upload any information. When did the system transmit the arrears notice shown in the two credit reports? The credit reports don't date it. The complaint alleges only that the reports were issued after July 1, 2017. Edwards, however, was not reassigned as the caseworker until November, several months and so several system monthly updates later. The record tells us nothing about when the system transmitted the information to the credit reporting agencies. My client alleges in his complaint, which is a verified pleading, it was sworn under the penalty of perjury, that during this time frame from November 2017 to September 2018, which she was assigned during that period, she says that in her own affidavit, he represents that during that time there were false reports being made to these credit reporting agencies, even though the Alabama default judgment was already vacated. So it seems like there probably should be an awful lot of cases from people in child support or defamation cases when it shows up on their credit report and there aren't. Do you have any idea why that might be? I think it's just the facts of this case. This isn't a usual case where it's just some random third party who's working in a government office and says, oh, here's an order, I'm going to upload this. He's alleging that she's responsible from the get-go. Not only is she uploading this false information, she was the one who created this false transmittal report that sent this whole thing in motion. Okay, Mr. Norris, we've allowed you to go over. You've saved three minutes. Let's hear from Mr. Geiger. Mr. Chief Judge, and may it please the court, good morning. Good morning. Soren Geiger for Ms. Edwards in this appeal. If I may begin with clarifying or speaking to a few statements made about the record in this case, I think that could help. The error alleged about this 2008 transmittal cover letter is nothing more than, if anything, a typo. It was just the wrong year or the wrong case number placed into the form. It's a harmless error, if anything, because Ms. Edwards, again, attached certified copies of the controlling Georgia court orders when she sent that UFSA package off to Louisiana. Louisiana Department of Child and Family Services had everything they needed to process that request to register and then enforce the child support obligation owed by Mr. Tunstall. And a four instead of a two on the cover letter did not somehow lead them astray. But more importantly with that order, the amount of arrears input into the cover letter was, to the best of our knowledge, correct. Judge Barber, there was no negligence on Ms. Edwards' part alleged nor proven with evidence at summary judgment. A lot was just made about these Alabama proceedings from 1995 to 2008. It's important to remember that in 1995, EURESA, the Uniform Reciprocal Enforcement of Support Act, was in effect. It wasn't repealed by UFSA until 1999. Under EURESA, there could be multiple court orders of child support in effect at the same time in different states. That's what happened here. There was a support order from Georgia from 1994 and then in 1995, there was a support order from Baldwin County, Alabama. And in the past due support affidavit, which Ms. Glidewell attached in 2008, alleging an arrears amount of $68,000, it's clear that she showed, excuse me, that she showed that Mr. Tunstall had begun to pay some on that Alabama obligation in 1995, the amount of $370 here and there, making up some in some months. I just have a question about the scope of Ms. Edwards' responsibilities. Clearly, Mr. Tunstall, I don't know if you want to say chased throughout the South to collect these child support orders, but he definitely found himself in several states and several courts dealing with these different child support orders. To the extent a mistake was made in that process, who is responsible for that mistake? Is Ms. Edwards responsible for that mistake and or should have at least done more investigation? Would that have been part of her job responsibilities that she did not satisfy? Your Honor, it's not clear to me that it was her job responsibility to go deeper than she did to confirm from the affidavit from the custodial parent, Ms. Glidewell, that it was correct down to the last dollar. And she, in good faith, accepted that it was. It was a sworn affidavit. She then had the court orders that supported, mathematically supported, the arrears amount alleged in that affidavit and then sent it off to another independent party, the Louisiana Department of Child and Family Services. The NDA decided in her discretion to pursue registration of that foreign order, the Georgia order, and enforce it against Mr. Tunstall there in his home state of Louisiana. So for purposes of making sure that all of the underlying documents to support the ultimate orders were correct or proper or even legal, are you saying that was not Ms. Edwards' responsibility to do? Under U.S.A., which the Social Security Act requires states to adopt, Ms. Edwards had to include certified copies of those court orders, had to include a registration statement showing the arrearage amount, and had to include that cover letter. She did all of those things in good faith to the best of her ability and satisfied her obligation there. If there was an error, an egregious error, I suppose she is responsible. But again, no error has been shown with evidence and certainly not a typographical error of the nature that actually has been emphasized. It could even rise to the level of an error that this court should be concerned about. Did you work on this case at the trial court level? I did not, Your Honor. All right. Do you know, was Mr. Tunstall ever deposed? I see all this record information. I don't see a depo from him. Was he ever deposed? We didn't depose him, Your Honor. He was representing himself, as you may know, at the trial level. In response to all the evidence that we submitted at summary judgment, he rested on his verified complaint. He didn't try to secure it. Right. And that's why we're here, because of his verified complaint. If he had been deposed, somebody could have asked him, why do you think this? Why do you think that Ms. Edwards is out to get you? We might have some more information. But be that as it may, here we are. Did he ask for a jury trial in his complaint? I don't think so. This could have been a really quick bench trial with all this information out there on the table and we wouldn't be worried about a verified complaint in any event. Your Honor, one key bit of evidence that he needs, and the Court just touched upon this a few minutes ago, is to show some causal link between Ms. Edwards' activity in 2008 by signing that UIFSA cover letter and sending the package off to Louisiana and then the 2011 Baldwin County default judgment. And the only piece of evidence which, on page 19 of the initial brief and page 3 of the reply brief, appellant has pointed to, is this allegation hidden away in paragraph 52 of the verified complaint, which in relevant part reads, Edwards manipulated plaintiff's official child support records and falsified official state documents so as to obtain the April 2011 default judgment. And that's it. It's well established in black letter law in this circuit and I'm sure everywhere that a verified complaint receives the same level of scrutiny as an affidavit does and a conclusory allegation of ultimate fact that's not supported with additional facts or based on personal knowledge has no probative value and is not competent evidence at summary judgment. And Judge DeBose made no error there when not crediting that as evidence to the contrary of what we've submitted. That would then take away, because of the statute of limitations going into effect in 2010, the vast majority of the constitutional claims alleged, leaving only perhaps a few claims tethered to some activity in 2017 or 2018. And for the reasons that Chief Judge Pryor just pointed out, there are some chronological problems with the unlawful activity alleged and Ms. Edwards' involvement as caseworker in this matter. It wasn't a few months that she wasn't a caseworker. She wasn't a caseworker from November 1, 2008, until November 3, 2017. A lot happened in the middle, in which she had no personal involvement, and then the ALEKS program, pursuant to valid court orders, started to send to credit reporting agencies or send to Mr. Tunstall himself some statements and there's no evidence that Ms. Edwards was responsible at that time for updating ALEKS or inputting the right data into ALEKS if there ever was any wrong data in the system to begin with, which I don't see any evidence in the record of there being a problem there. What do you think about their argument, I'll probably misstate it, but the idea that, okay, if you send something to the New York Times, you've got to know they're going to publish it, that's what they do. This publication point seems a little unusual to me. What are your thoughts? I don't really have a problem with that argument. I don't think that's exactly what Judge DuBose was saying below or what we're arguing on appeal, that just because there was this computer between the third party and Ms. Edwards, that somehow absolves her of any responsibility to get things right. Is there a reason why these social workers aren't regularly sued for inputting stuff in whatever your system is called? What is it called? ALEKS. ALEKS. I'm not sure. I mean, I assume they get it right most of the time, the vast majority. Maybe the Fair Credit Reporting Act gives immunity for people that make reports to credit bureaus. That's not been argued in the case, but has anybody ever thought about that? Of course, what we have alleged here are supposedly constitutional torts, and the question is whether your client enjoys qualified immunity from those claims because we don't have a clearly established constitutional violation alleged here. And that would shield Ms. Edwards from liability for all of the alleged action other than... The defamation claim. Yeah. Right. Where a state agency immunity kicks in. We don't really have enough. We don't have facts that really allege that Ms. Edwards was responsible for any supposed defamation. No, Your Honor, nor that she acted in bad faith, which would be required to overcome state agency immunity. Thank you, Mr. Geiger. Mr. North. Thank you, Your Honor. So I'll touch on a few points that were raised in the argument beforehand. I'll start with the argument that Paragraph 52 of the Verified Complaint is too or lacks personal knowledge to constitute as evidence. It has a conclusory nature to it, but you have to take a step back and realize Mr. Tunstall knows that there's no obligation that was created from that 1994 defense of a divorce. He knows that his wife never got this Georgia order in the Alabama child support proceedings. By process of elimination, what else could it be that's motivating the former wife to believe her claim has merit? Her petition to reopen child support proceedings in Alabama, it has the exact same documents that were attached to the transmittal report. The district court even references that, even acknowledges it, but it doesn't give it any credence because it says, oh, she didn't directly participate. You don't need direct participation, though. As long as there's a causal connection caused by setting forth in motion and motivating other actors to do this, that's enough, and we have that evidence here. I also want to talk about the point about the district court never said that the fact that Ms. Edwards uploaded the information to Alex, that that didn't constitute as publication. The district court explicitly said that. I also want to talk about the clearly established constitutional right. It's his own money. The court said he didn't owe any more money, and now all of a sudden he owes over $140,000 more. There is absolutely a clearly established constitutional right. But that amount that he was alleged to have owed was corrected. What is the full universe of harm your client, or Mr. Tunstall, is alleging that he suffered? He's also alleging that his passport privileges were suspended for seven years, which that would be a violation of the constitutional right to travel abroad. He was also alleging that his driver's license, his hunting's license, were suspended for seven years as well. His wages were being garnished. His income tax returns were being garnished. He wasn't able to receive loan funding for his company because his credit score was so bad, so then he lost ownership within that company. So those would be the gist of it, and also the money he had to pay as a result. There was also a contempt proceeding, because at one point he wasn't able to make these payments, so Louisiana held him in contempt. He didn't serve a sentence, but at the same time, he had two years of probation assigned, and this order was ultimately voided when it was all said and done. The ERISA point, I want to touch on that real quick. There was a point where Alabama had a statute that would allow multiple child support orders to be active at once. It was from 1995 to 1999, where there could have been a period that the former wife could have introduced that Georgia support order if it existed. It never happened, though, and because of that, the Alabama court said, you can't bring child support on these orders. They were never brought up. Okay. Mr. Norris, you were court appointed, and we appreciate you accepting the appointment in this case. I think we understand your case, and we're going to be in recess until tomorrow.